IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SOFTEX LLC,  §<br>　　　　　　　*Plaintiff*,  §<br>　　　　　　　　　　§<br>v.  §<br>　　　　　　　　　　§<br>ABSOLUTE SOFTWARE  §<br>CORP.,  §<br>ABSOLUTE SOFTWARE, INC.,  §<br>　　　　　　　*Defendants*.  §<br>　　　　　　　　　　§ | No. 1:22-CV-1308-DAE |

<u>ORDER ADOPTING REPORT & RECOMMENDATION</u>

Before the Court is the Report and Recommendation

("Recommendation") of U.S. Magistrate Dustin M. Howell, filed on November 6,

2024, recommending the Court adopt certain constructions, described below, for

eight disputed claims in this patent infringement case.  (Dkt. # 115.)  Defendants

Absolute Software Corporation and Absolute Software, (collectively, "Absolute" or

"Defendants") filed objections to the Recommendation on November 20, 2024.

(Dkt. # 117.)  Plaintiff Softex LLC ("Softex") filed its response on December 4,

2024.  (Dkt. # 118.)  Absolute filed a reply on December 11, 2024.  (Dkt. # 119.)

The Court finds this matter suitable for disposition without a hearing.

After conducting a de novo review of the objected-to portions of the

Recommendation and reviewing the unobjected-to portions for clear error, the

1

Court finds that Absolute's objections should be **OVERRULED** and the Report and Recommendation (Dkt. # 115) should be **ADOPTED.**

BACKGROUND

I.    <u>Factual Background</u>

Plaintiff Softex filed its complaint for patent infringement against the Absolute Defendants on December 14, 2022.  (Dkt. # 1.)   Softex asserts infringement of its United States Patent Nos. 7,590,837 ("'837 patent"), 8,516,235 ("'235 patent"), 8,145,892 ("'892 patent"), 8,287,603 ("'603 patent"), 8,506,649 ("'649 patent"), 8,137,410 ("'410 patent"), and 8,128,710 ("'710 patent") (collectively, the "Asserted Patents").  The patents share a common specification and the '837 patent is utilized by the Court and the parties as the exemplary patent. (Dkt. # 117 at 1.)

The Asserted Patents concern software providing security and tracking services for electronic devices. (Dkt. # 115 at 1.)  After a user registers his or her device and reports it as stolen, the software "instructs" the device to "take appropriate action" according to the user's preferences, including disabling the device, destroying data on its hard disk drive, encrypting the data, and other actions.  See, e.g., '837 patent, at 7:15–39.

2

II.    <u>Procedural Background</u>

On October 10, 2023, Absolute filed its opening claim construction brief.  (Dkt. # 53.)  On November 28, 2023, Softex filed its opening claim construction brief.  (Dkt. # 60.)  On December 13, 2023, Absolute filed its reply brief in support of its opening claim construction.  (Dkt. # 63.)  Softex filed its reply in support of its opening claim construction on January 5, 2024.  (Dkt. # 66.)  On December 18, 2023 the parties filed a Joint Claim Construction Statement indicating certain agreed constructions.  (Dkt. # 64.)

On June 18, 2024, the Court referred the claim construction proceedings to United States Magistrate Judge Dustin M. Howell for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  **(**Dkt. # 98.)

Judge Howell held a <u>Markman</u> hearing on October 22, 2024.  At the hearing, Judge Howell considered eight disputed terms.  (Dkt. # 115 at 2.)  Six of those terms fall into what the parties call the "component/module terms" category: "application component," "non-viewable component," "non-viewable security component," "BIOS component," "BIOS security component," and "validator module."  (<u>Id.</u>)  In its claim construction briefing, Absolute argued that these six terms are governed by the means-plus-function analysis in 35 U.S.C. § 112, ¶ 6

and, accordingly, fail for indefiniteness, due to a lack of corresponding structure.[1]
See Dkt. # 53, at 5.  Moreover, Absolute argued that each of the
component/module terms fails § 112,¶ 2 as indefinite under Biosig Instruments,
Inc. v. Nautilus, Inc., 783 F.3d 1374, 1378 (Fed. Cir. 2015).  In addition, at the
Markman hearing, Absolute argued that for each of the component/module terms,
Softex's proposed constructions violate the rule from Indacon, Inc. v. Facebook,
Inc., 824 F.3d 1352 (Fed. Cir. 2016), requiring that "coined terms" be defined no
more broadly than supported by the specification. Regarding the remaining
terms—"BIOS" and "central server"—Absolute argued that rather than adopt the
terms' plain and ordinary meanings as proposed by Softex, the Court should adopt
Absolute's proposed narrower constructions.  See Dkt. # 53 at 6.

On November 6, 2024, the instant Report and Recommendation was
filed.  (Dkt. # 115.)  Absolute filed timely objections to the Recommendation on
November 20, 2024.  (Dkt. # 119.)  Softex responded on December 4, 2024 (Dkt.
# 118) and Absolute replied on December 11, 2024 (Dkt. # 119.)  Absolute has

---

[1] Paragraph 6 of 35 U.S.C. § 112 was replaced with newly designated § 112(f)
when § 4(c) of the Leahy–Smith America Invents Act ("AIA"), Pub. L. No. 112–
29, took effect on September 16, 2012. Because the application resulting in the
Asserted Patents was filed before that date, the Court refers to the pre-AIA version
of § 112.  See e-Numerate Sols., Inc. v. United States, 165 Fed. Cl. 237, 261
(2023).

filed five objections[2] to Judge Howell's Recommendation, again invoking its 35

U.S.C § 112, sixth paragraph, <u>Nautilus</u>, and <u>Indacon</u> arguments raised during claim

construction.  (<u>See</u> Dkt. # 117.)  Moreover, Absolute contends that the

Recommendation failed to clarify the "plain and ordinary meaning" for several of

the disputed terms, and therefore requests, in the alternative, that the Court return

this matter to the Magistrate Judge for "clarification" of the recommended "plain

and ordinary meaning" constructions.

APPLICABLE LAW

I.    <u>Standard of Review</u>

The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made."). The objections must specifically identify those findings or

recommendations that the party wishes to have the district court consider.  <u>Thomas</u>

<u>v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous,

conclusive, or general objections."  <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419,

---

[2] Absolute has styled its objections as pertaining to the construction of "application component," "non-viewable [security] component," "validator module," and "BIOS component / BIOS security component / BIOS."  (<u>See</u> Dkt. # 117.)

421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require *de*

*novo* review; the Court need only determine whether the Recommendation is

clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221

(5th Cir. 1989).

II.    Claim Construction Principles

The meaning of terms used in a patent claim is a question of

law. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 391 (1996).

"[T]he claims of a patent define the invention to which the patentee is entitled to

the right to exclude." Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,

381 F.3d 1111, 1115 (Fed. Cir. 2004). "[D]istrict courts are not (and should not be)

required to construe every limitation present in a patent's asserted claims." O2

Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1362 (Fed.

Cir. 2008). Instead, the purpose of claim construction is to resolve the "disputed

meanings and technical scope [of the claims], to clarify and when necessary to

explain what the patentee covered by the claims, for use in the determination of

infringement." U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir.

1997). Claim construction is not an exercise in rewriting claims, but rather an

opportunity to "give effect to the terms chosen by the patentee." K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999).

"Claim interpretation begins with an examination of the intrinsic evidence, i.e., the claims, the rest of the specification and, if in evidence, the prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002). Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The claim construction analysis "remain[s] centered on the claim language itself, for that is the language the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." Innova/Pure Water, Inc., 381 F.3d at 1116 (internal quotation marks omitted). "[T]he words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention ["POSITA"] . . . ." Id. at 1313. This inquiry "provides an objective baseline from which to begin claim interpretation." Id.

Because the claims "do not stand alone" and "are part of a fully integrated written instrument consisting principally of a specification that concludes with the claims[,]" the claims "must be read in view of the specification, of which they are a part." Id. at 1315 (internal quotation marks and citations omitted). Accordingly, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id. In interpreting the effect the specification has on the claim limitations, however, courts must pay special attention to the admonition that one looks "to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his invention, and not merely to limit a claim term." Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1332 (Fed. Cir. 2001). "[R]eading a limitation from the written description into the claims" is "one of the cardinal sins of patent law . . . ." Phillips, 415 F.3d at 1320.

Aside from the intrinsic evidence, the Court may also consult "extrinsic evidence," which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317. While extrinsic evidence "can shed useful light on the relevant art," extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." Id.

8

(internal quotation marks omitted).  Further, "it is improper to rely on extrinsic

evidence" when "an analysis of the intrinsic evidence alone will resolve any

ambiguity in a disputed claim term." Vitronics Corp., 90 F.3d at 1583.  And even

when consulting extrinsic evidence is warranted, such evidence "is to be used for

the court's understanding of the patent, not for the purpose of varying or

contradicting the terms of the claims."  Markman, 52 F.3d at 98.

III.    Means-Plus-Function Under 35 U.S.C. § 112, ¶ 6

The statutory basis for means-plus-function claiming is 35 U.S.C.

§ 112, ¶ 6 (now 35 U.S.C. § 112(f)), which states:

> An element in a claim for a combination may be expressed as a means
> or step for performing a specified function without the recital of
> structure, material, or acts in support thereof, and such claim shall be
> construed to cover the corresponding structure, material, or acts
> described in the specification and equivalents thereof.

Means-plus-function claiming both gives and takes away, permitting functional

claim language but "restricting the scope of coverage to only the structure,

materials, or acts described in the specification as corresponding to the claimed

function and equivalents thereof."  Williamson v. Citrix Online, LLC, 792 F.3d

1339, 1347 (Fed. Cir. 2015).

The first step in the means-plus-function analysis is to determine

whether § 112, ¶ 6 applies. "The standard is whether the words of the claim are

understood by persons of ordinary skill in the art to have a sufficiently definite

meaning as the name for structure." Id. at 1349. Claims that do not contain the term "means" are presumptively not subject to § 112(f). Id. at 1348. That presumption is overcome when the challenger shows, by a preponderance of the evidence, that a person of ordinary skill in the art ("POSITA") "would not have understood the [term] limitations to connote structure in light of the claim as a whole." Dyfan, LLC v. Target Corp., 28 F.4th 1360, 1368 (Fed. Cir. 2022). While the Federal Circuit previously required a "heightened" evidentiary showing to overcome a "strong" presumption—asking challengers to show that the limitation was essentially devoid of "anything that could be construed as structure"—the Federal Circuit has taken that proverbial thumb off the scale. Williamson, 792 F.3d at 1349.

      If the court concludes that § 112, ¶ 6 applies, it must then determine "whether the specification discloses sufficient structure that corresponds to the claimed function." Id. at 1351. If both the claim and the specification fail to disclose sufficient structure to perform the claimed function, then the claim is indefinite. Williamson, 792 F.3d at 1352.

      Construing a means-plus-function term involves two sub-steps. Id. First, the court identifies the claimed function. Id. Second, the court determines "what structure, if any, disclosed in the specification corresponds to the claimed function." Id. Where the patentee claims multiple functions, he or she "must

disclose adequate corresponding structure to perform all of the claimed functions." Id. at 1351-52. If the patentee fails to disclose a structure, the claim fails as indefinite. Id. at 1352. Computer-implemented means-plus-function claims are indefinite unless the specification discloses an algorithm to perform the function associated with the limitation. Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1319 (Fed. Cir. 2012).

IV.    Indefiniteness Under 35 U.S.C. § 112, ¶ 2 and Nautilus

Patent claims must "particularly point[] out and distinctly claim[] the subject matter . . . regard[ed] as the invention." 35 U.S.C. § 112,¶ 2. A patent fails as indefinite under § 112,¶ 2 if a challenger shows by clear-and-convincing evidence that the claims, read in light of the intrinsic evidence, "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901 (2014); BASF Corp. v. Johnson Matthey Inc., 875 F.3d 1360, 1365 (Fed. Cir. 2017). The claims, read in light of the specification and prosecution history, "must provide objective boundaries for those of skill in the art." Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1371 (Fed. Cir. 2014).

V.    Indacon and Coined Terms

When a term is found to be a "coined term" with no plain and ordinary meaning, it invokes the rule in Indacon, Inc. v. Facebook, Inc., 824 F.3d

11

1352, 1357 (Fed. Cir. 2016), requiring that coined terms be construed no more broadly than the specific embodiments in the specification.  In <u>Indacon</u> and <u>Irdeto Access, Inc. v. Echostar Satellite Corp.</u>, 383 F.3d 1295, 1300 (Fed. Cir. 2004), the Federal Circuit determined that a construction broader than the language in the specification was improper where the specification "repeatedly, consistently, and exclusively" used a more limited definition. <u>See</u> <u>Indacon</u> 824 F.3d at 1357 (refusing a broader construction where each usage in the specification supported a narrower construction).

DISCUSSION

I.    <u>Agreed Constructions</u>

On December 23, 2023, the parties filed a Joint Claim Construction Statement indicating their agreed upon constructions for non-disputed terms. (<u>See</u> Dkt. # 64.)  The Court accepts the parties' agreed upon constructions.

II.    <u>Disputed Terms</u>

A.    <u>Application Component</u>

The Recommendation concluded that this term should be construed according to its plain and ordinary meaning.  For the reasons stated below, the Court **ADOPTS** that conclusion.[3]

---

[3] While Absolute argued during the claim construction proceedings that the term "application component" was indefinite under <u>Nautilus</u>, it does not appear to object to the Recommendation's conclusion that this term is not indefinite under <u>Nautilus.</u>

12

1.    § 112, ¶ 6

The Recommendation concluded that the term "application component," was not subject to § 112, ¶ 6 because Absolute offered insufficient intrinsic evidence in support of its position that a POSITA would not have understood the "application component" term to connote structure in light of the claim as a whole.  (Dkt. # 115 at 11–13.)  In its objections, Absolute contends that the Recommendation made two errors: (1) relying on the specification rather than the claim language to assess whether the term connotes sufficient structure, and (2) relying upon analysis using an overruled "strong presumption."  (Dkt. # 117 at 2.)  For the reasons discussed below, these objections are **OVERRULED** and the Recommendation's conclusion that § 112, ¶ 6 does not apply to the term "application component" is **ADOPTED** by the Court.

In reviewing the parties' arguments for construction of the term "application component," de novo, the Court finds that the Recommendation properly concluded that Absolute failed to meet its burden of showing that a POSITA would not have understood this term to connote structure.  Absolute did not carry its burden because, as the Recommendation noted, the algorithms disclosed in the Asserted Patents are sufficient to apprise a POSITA of structure in

Accordingly, the Court has reviewed that conclusion for clear error, and finding, none it **ADOPTS** the Recommendation's finding that "application component" is not indefinite under <u>Nautilus</u>.

light of the claims as a whole.  (Dkt. # 15 at 11.)  Moreover, contrary to Absolute's

contention that courts cannot rely on the specification to construe whether a term

connotes sufficient structure to avoid implicating the means-plus-function analysis

required by § 112, ¶ 6, courts consider how a POSITA would understand a term "in

light of the claim *as a whole."*  Dyfan 28 F. 4th at 1368 (emphasis added).  It is

well-settled that a POSITA "is deemed to read the claim term not only in the

context of the particular claim in which the disputed term appears, but in the

context of the entire patent, *including the specification*."  Phillips, 415 F.3d at 1313

(emphasis added).  Thus, Absolute's objection on this ground is without merit.

Furthermore, the Recommendation did not rely on the "strong

presumption" against applying § 112, ¶ 6 to a term that lacks the word "means"

that was overruled in Williamson.  792 F.3d at 1349.  According to Absolute, by

citing to Apple Inc. v. Motorola, Inc., which was overruled in part by Williamson

due to its application of the "strong presumption", the Recommendation

necessarily applied that presumption to this case.  See 757 F.3d at 1297–99.  The

Court disagrees.  The Recommendation's citation to Apple did not apply the

defunct "strong presumption" against means-plus-function treatment.  Instead, the

Recommendation relied on Apple for its holding that the structure of computer

software can be described in a specification through an algorithm, flowchart, or set

of instructions.  See Apple, 757 F.3d at 1298–99; (Dkt. # 15 at 12).  Accordingly, Absolute's objection on this basis lacks merit and is **OVERRULED.**

      2.    <u>Indacon Limitations</u>

      Absolute further objects to the Recommendation's conclusion that "application component" is not a "coined term" that lacks plain and ordinary meaning to a POSITA, under <u>Indacon,</u> and should therefore not be limited to the specific embodiments disclosed in the specification.  See 824 F.3d at 1357. However, the Court agrees with the Recommendation's conclusion that Absolute failed to meet its burden to demonstrate that "application component" is a coined term.  The threshold issue of whether a term is a coined term is an issue of fact, and the Court finds that Absolute has not adequately demonstrated that this is a coined term.  See <u>Koninklijke KPN N.V. v. Samsung Elecs. Co.,</u> 2016 WL 2610649, at *20 (E.D. Tex. May 6, 2016).  Accordingly, the Court agrees with the Recommendation that this term should be construed according to its plain and ordinary meaning to a POSITA, and need not be limited to the specific embodiments disclosed in the specification.  Thus, this objection is **OVERRULED.**

      3.    <u>Plain and Ordinary Meaning</u>

      In the alternative, Absolute contends that if neither § 112, ¶ 6 nor <u>Indacon</u> apply, the Court must still define the plain and ordinary meaning of

"application component" because the parties dispute the plain and ordinary

meaning of that term.  See Eon Corp. IP Holdings LLC v. Silver Springs Networks,

Inc., 815 F.3d 1314, 1319 (Fed. Cir. 2016) (finding district court improperly

delegated to the jury task of determining claim scope by instructing it to give terms

their plain and ordinary meaning, where parties actively disputed the terms' scope

and terms had more than one ordinary meaning).  Absolute relies on O2 Micro

Int'l, Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351 (Fed. Cir. 2008), for the

proposition that "[w]hen the parties raise an actual dispute regarding the proper

scope of . . . claims, the court, not the jury, must resolve that dispute."  (Dkt. # 117

at 1.)

Softex responds that Absolute failed to provide an alternative meaning

or construction during claim construction proceedings, and it therefore cannot now

manufacture a dispute under O2 Micro.  Absolute counters that it did raise the

argument that the term had multiple meanings in its claim construction briefing.

(Dkt. # 119 at 7) (citing Dkt. # 53 at 13 ("The specification itself thus confirms that

'application component' is an indefinite black box that could arbitrarily

encapsulate one or multiple applications.")).  In addition, Absolute now contends

in its objections that the specification presents two meanings: (1) a software

component that is an application or (2) a component of an application.  (Dkt. # 119

at 6.)

The Court agrees with Softex that Absolute failed to provide an alternative construction of "application component" during the claim construction proceedings, and instead chose to focus its efforts on its § 112, ¶ 6, <u>Indacon</u>, and <u>Nautilus</u> arguments. Furthermore, in its objections, Absolute has not provided the Court with a meaningful dispute regarding the scope of the term "application component." Because (1) Absolute has not presented a fundamental dispute regarding the *scope* of this term, and, alternatively, (2) a POSITA would be presumed to know the plain and ordinary meaning of this term, the Court need construe "application component" at this time. <u>See</u> <u>Star Envirotech, Inc. v. Redline Detection, LLC</u>, 2015 WL 12743875, at *3 (C.D. Cal. Apr. 30, 2015) ("[W]hile it is the duty of this Court to resolve all disputes regarding the scope of claim terms, nothing in <u>O2 Micro</u> requires this Court to replace every disputed claim term with an explicit definition.") Nothing in <u>O2 Micro</u> requires district courts to serves as "all-purpose dictionaries," and absent a "true dispute regarding the *scope* of the word or phrase, district courts are not required to step in and paraphrase each claim term." <u>Id.</u> (emphasis in original). Should Absolute identify a *genuine* dispute under <u>O2 Micro</u> prior to trial, it may reasonably request the Court resolve such a dispute. However, at this time, Absolute has not done so.

Accordingly, the Court **OVERRULES** each of Absolute's objections as they pertain to the term "application component," and **ADOPTS** the

Recommendation's conclusion that the plain meaning of "application component" controls.

    B.    <u>Non-Viewable [Security] Component</u>

        The Recommendation concluded the terms "non-viewable component" and "non-viewable security component" should be construed according to their plain and ordinary meanings. [4] For the reasons stated below, the Court **ADOPTS** that conclusion.[5]

    1.    <u>§112, ¶ 6</u>

        First, the Court agrees with the Recommendation's conclusion that Absolute failed to meets its burden of showing that a POSITA would not have understood the terms "non-viewable component" and "non-viewable security component" to connote structure. (Dkt. # 115 at 16–17.) As discussed above, Absolute's objection to the Recommendation on the grounds that it improperly relied on the specification to determine whether the claims identified sufficient structure is without merit. Accordingly, the Court **ADOPTS** the

---

[4] The parties agreed during the <u>Markman</u> proceedings that these terms could be construed together. (<u>See</u> Dkt. # 115 at 16, n.12.)

[5] While Absolute argued during the claim construction proceedings that "non-viewable [security] component" terms are indefinite under <u>Nautilus</u>, it does not appear to object to the Recommendation's conclusion that those terms are not indefinite under <u>Nautilus</u>. Accordingly, the Court has reviewed that conclusion for clear error, and finding, none it **ADOPTS** the Recommendation's finding that the "non-viewable [security] component" terms are not indefinite under <u>Nautilus</u>.

Recommendation's conclusion that the terms "non-viewable component" and

"non-viewable security component" do not invoke § 112, ¶ 6.

       2.     <u>Indacon Limitations</u>

      Next, Absolute objects to the Recommendation's conclusion that the

"non-viewable [security] component" terms do not invoke <u>Indacon's</u> "coined term"

rule.   However, the Court agrees with the Recommendation's finding that the use

of the "non-viewable [security] component" terms in the exemplary '837 patent do

not rise to the level of "repeated[], consistent[], and exclusive[]" limited use found

in <u>Indacon</u>. Thus, the terms "non-viewable [security] component" should not be

limited to the embodiments in the specification, as Absolute proposes.

Accordingly, the Court **ADOPTS** the Recommendation's conclusion that "non-

viewable component" and "non-viewable security component" should be construed

according to their plain and ordinary meaning.

       3.     <u>Plain Meaning</u>

      Absolute relies on <u>O2 Micro</u> to argue that the Recommendation failed

to "expressly resolve" a dispute as to the scope of "non-viewable [security]

component." (Dkt. # 117 at 7.)  However, the Court disagrees and finds that the

Recommendation construed the plain meaning of "non-viewable [security]

component" to mean "a section of the program that is typically hidden."

(Dkt. # 115 at 117.)  The Court finds that this construction aligns with <u>Zeroclick</u>

19

LLC v. Apple, Inc., where the Federal Circuit emphasized that the context in which a term appears can strongly suggest its plain and ordinary meaning. 891 F.3d 1003, 1008 (Fed. Cir. 2016). Thus, Absolute's objection on this basis is **OVERRULED** and the Court **ADOPTS** the Recommendation's construction of "non-viewable security component."

## C.    Validator Module

The Recommendation concluded the term "validator module" should be construed according to its plain and ordinary meaning. For the reasons stated below, the Court **ADOPTS** that conclusion.[6]

### 1.    § 112, ¶ 6

Absolute first objects to the Recommendation's conclusion that the term "validator module" is not subject to § 112, ¶ 6. Examining both the claims and the specification, the Recommendation found Absolute failed to overcome the presumption against applying § 112, ¶ 6, where "means" is not used in a claimed term. As explained above in relation to the other disputed terms, Absolute's contention that the Recommendation erred by considering the specification when

---

[6] While Absolute argued during the claim construction proceedings that the term "validator module" is indefinite under Nautilus, it does not appear to object to the Recommendation's conclusion that that term is not indefinite under Nautilus. Accordingly, the Court has reviewed that conclusion for clear error, and finding, none it **ADOPTS** the Recommendation's finding that the term "validator module" is not indefinite under Nautilus.

determining whether "validator module" sufficiently connotes structure is without merit. The Court agrees with the Recommendation that Absolute failed to demonstrate that a POSITA would not understand "validator module" to connote structure, looking at the claim as a whole, including the specification. Accordingly, Absolute's objection on this basis is **OVERRULED** and the Court **ADOPTS** the Recommendation's conclusion that "validator module" does not invoke § 112, ¶ 6.

2.    Indacon Limitations

Absolute contends that "validator module" lacks a plain and ordinary meaning and therefore should be limited to the disclosures in the specification ("a program that implements the steps shown in Figure 54") under Indacon's "coined term" rule. (Dkt. # 117 at 11–12.) However, Softex has provided expert evidence supporting the idea that the plain and ordinary meaning of "validator module" is a "computer application that validates." (Dkt. # 60-2. At ¶¶210–20.) Accordingly, Absolute's objection on this basis is **OVERRULED** and the Cour **ADOPTS** the Recommendation's conclusion that "validator module" is not a coined term under Indacon.

3.    Plain Meaning

Finally, Absolute contends that the Court must "clarify" the Recommendation's proposed plain and ordinary meaning of "validator module." (Dkt. # 117 at 12.) As far as the Court can discern, Absolute appears to again be

arguing that there is an unresolved <u>O2 Micro</u> dispute as it relates to this term. However, Absolute failed to provide an alternative construction of this term during the claim construction proceedings, and instead chose to focus its efforts on its § 112, ¶ 6, <u>Indacon</u>, and <u>Nautilus</u> arguments.  (<u>See</u>, <u>e.g.</u>, Dkt. #64 at 28) ("no construction offered").  Moreover, it has not provided the Court with a meaningful <u>O2 Micro</u> dispute in its objections.  Should Absolute identify a *genuine* dispute under <u>O2 Micro</u> prior to trial, it may request the Court resolve such a dispute. However, at this time, Absolute has not done so.

Accordingly, the Court **OVERRULES** each of Absolute's objections as they pertain to the term "validator module," and **ADOPTS** the Recommendation's conclusion that the plain meaning of "validator module" ("a computer application that validates") controls.

D.    <u>BIOS[7] [Security] Component / BIOS[8]</u>

1.    <u>§ 112, ¶ 6</u>

Absolute first objects to the Recommendation's conclusion that the terms "BIOS component," "BIOS [security component]", and "BIOS"

---

[7] BIOS stands for "basic input/output system."  Softex contends that the plain and ordinary meaning of BIOS is a "firmware that is used to start the computer system after it is turned on."  (Dkt. # 60 at 2.)

[8] During the <u>Markman</u> hearing, the parties agreed that the "BIOS" term did not need to be construed separately from the "BIOS [security] component" terms. (Dkt. # 113.)

(collectively, the "BIOS terms") are not subject to § 112, ¶ 6.  Examining the

claims in light of the specification, the Recommendation found that the

presumption against applying § 112, ¶ 6 was not overcome.  As explained above in

relation to the other disputed terms, Absolute's contention that the

Recommendation erred by considering the specification when determining whether

the BIOS terms sufficiently connote structure is without merit.  The Court agrees

with the Recommendation that Absolute failed to demonstrate that a POSITA

would not understand these terms to connote structure, looking at the claims as a

whole, including the specification.  Accordingly, Absolute's objection on this basis

is **OVERRULED** and the Court **ADOPTS** the Recommendation's conclusion that

the BIOS terms do not invoke § 112, ¶ 6.

### 2.   Indacon Limitations

Next, Absolute contends that the BIOS terms lack a plain and ordinary

meaning and therefore should be limited to the disclosures in the specification.

Specifically, Absolute contends these terms should be limited as being stored only

in read-only memory, or ROM.  (Dkt. # 117 at 13.)  However, the Court agrees

with the Recommendation's conclusion that the BIOS terms carry their plain and

ordinary meanings.  Thus, it would be improper to limit those terms to the

embodiments in the specification.  See CollegeNet, Inc. v. ApplyYourself, Inc., 418

F.3d 1225, 1231 (Fed. Cir. 2005) ("In examining the specification for proper

context, however, this court will not at any time import limitations from the specification into the claims."). Accordingly, Absolute's objection on this basis is **OVERRULED** and the Court **ADOPTS** the Recommendation's conclusion that the BIOS terms, when construed according to their plain and ordinary meaning, are not limited to specific embodiments in the specification.

3.    Plain Meaning

Absolute similarly asks the Court to explain the "plain and ordinary meaning" of the BIOS terms, contending that the Recommendation failed to do so. While the Court is not convinced Absolute has raised a genuine O2 Micro dispute, it nevertheless acknowledges that some construction may be useful for these terms. See TQP Dev., LLC v. Merrill Lynch & Co., Inc., 2012 WL 1940849, at *2 (E.D. Tex. May 29, 2012) ("The Court believes that some construction of the disputed claim language will assist the jury to understand the claims."). Thus, the Court construes the plain and ordinary meaning of "BIOS security component" to be a "security component of electronic device firmware that is used to start the computer system after it is powered on." (Dkt. # 64 at 30.)

Accordingly, the Court **OVERRULES** each of Absolute's objections as they pertain to the BIOS terms and **ADOPTS** the Recommendation's conclusion that the plain meaning of the BIOS terms, as clarified above, controls.

24

E.    <u>Central Server</u>

The Recommendation concluded that the term "central server" should be construed according to its plain and ordinary meaning. The Court agrees and therefore **ADOPTS** the Recommendation's conclusion as to this term.

Absolute objects to this conclusion, arguing that the word "central" should be construed to mean "located within the premises of the administrator of the electronic device security system." (Dkt. # 117 at 14.)  Softex responds that the Recommendation correctly found Absolute had failed to put forward sufficient evidence of disavowal or lexicography to overcome the presumption that the term "central server" should be construed according to its plain and ordinary meaning. See <u>Thorner v. Sony Computer Entm't Am., LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  Additionally, Softex contends that Absolute asks the Court to commit the "cardinal sin" of claim construction: improperly importing limitations from the specification.  See <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1340–41 (Fed. Cir. 2001).

The Court agrees with Softex.  "[T]he specification need not present every embodiment or permutation of the invention and the claims are not limited to the preferred embodiment of the invention." <u>Netword, LLC v. Centraal Corp.</u>, 242 F.3d 1347, 1352 (Fed. Cir. 2001).  That is, "limitations from the specification are not to be read into the claims," even though claims must be read in light of the

specification.  <u>Comark Commc'ns, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998).  As such, the Court declines to limit the claimed term "central server" in the manner proposed by Absolute.

Furthermore, while the Court is not convinced Absolute has raised a genuine <u>O2 Micro</u> dispute as it pertains to this term, it nevertheless acknowledges that some construction may be useful to the jury.  Thus, the Court construes the plain and ordinary meaning of "central server" to include a server maintained at a location different from that of an administrator, including, such as a cloud-based implementation.

Accordingly, Absolute's objection on this basis is **OVERRULED** and the Court **ADOPTS** the Recommendation's conclusion that term "central server," is not limited to any specific embodiment in the specification and should instead to be given its plain and ordinary meaning.

F.    <u>Summary of Claim Construction</u>

In accordance with the foregoing discussion, the Court construes the terms at issue as follows:

| Claim Term | Softex's Proposed Construction | Absolute's Proposed Construction | Court's Construction |
|---|---|---|---|
| "application component" | Not subject to § 112, ¶ 6; no construction necessary | Subject to § 112, ¶ 6; limited to disclosed | Plain and ordinary meaning |

| | | embodiments under <u>Indacon</u> | |
|---|---|---|---|
| "non-viewable component" | Not subject to § 112, ¶ 6; "a part of a computer program, the contents of which are not viewable to a typical or normal user" | Subject to § 112, ¶ 6; limited to disclosed embodiments under <u>Indacon</u> | Plain and ordinary meaning, which is "a section of the program that is typically hidden" |
| "non-viewable security component" | Not subject to § 112, ¶ 6; "a part of a security-related computer program, the contents of which are not viewable to a typical or normal user" | Subject to § 112, ¶ 6; limited to disclosed embodiments under <u>Indacon</u> | Plain and ordinary meaning, which is "a security-related section of the program that is typically hidden" |
| "validator module" | Not subject to § 112, ¶ 6; plain and ordinary meaning, which is "a computer application that validates" | Subject to § 112, ¶ 6; limited to disclosed embodiments under <u>Indacon</u> | Plain and ordinary meaning, which is "a computer application that validates" |
| "BIOS component" | Not subject to § 112, ¶ 6; plain and ordinary meaning, which is "component of electronic device firmware that is used to start the computer system after it is powered on" | Subject to § 112, ¶ 6; limited to disclosed embodiments under <u>Indacon</u>; alternatively, "an option ROM BIOS image in an extension ROM BIOS" | Plain and ordinary meaning, which is a "component of electronic device firmware that is used to start the computer system after it is powered on" |
| "BIOS security component" | Not subject to § 112, ¶ 6; plain and ordinary meaning, which is "security component of electronic device firmware that is used | Subject to § 112, ¶ 6; limited to disclosed embodiments under <u>Indacon</u>; alternatively, "an option ROM BIOS | Plain and ordinary meaning, which is a "security component of electronic device firmware that is used to start the |

| | | | |
|---|---|---|---|
| | to start the computer system after it is powered on" | image in an extension ROM BIOS" | computer system after it is powered on" |
| "BIOS" | Plain and ordinary meaning, which is "electronic device firmware that is used to start the computer system after it is powered on" | "the set of essential software routines that tests hardware at startup, starts the operating system, supports the transfer of data among hardware devices, and is stored in read-only memory (ROM) so that it can be executed when the computer is turned on" | Plain and ordinary meaning, which is "electronic device firmware that is used to start the computer system after it is powered on" |
| "central server" | No construction necessary, plain and ordinary meaning | "a particular server located within the premises of the administrator of the electronic device security system" | Plain and ordinary meaning; which includes a server maintained at a location different from that of an administrator, such as a cloud-based implementation |

## CONCLUSION

For the reasons above, Absolute's objections to the Report and Recommendation are **OVERRRULED** (Dkt. # 117), and the Report and Recommendation is **ADOPTED.** (Dkt. # 115.)

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, May 21, 2025.

David Alan Ezra
Senior United States District Judge